UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**FILED IN OPEN COURT**

1-27-11

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA     :

            v.           :    CASE NO. 3:11-cr-87-J-34MCR

JAMES D. SPENCE, JR.        :

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, JAMES D. SPENCE, JR., and the attorney for the defendant, James H. Burke, Jr., Esq., mutually agree as follows:

A.    **Particularized Terms**

     1.    Count(s) Pleading To

        The defendant shall enter a plea of guilty to Counts Two, Three, Four, and Five of the Indictment. Counts Two through Five charge the defendant with making an interstate transmission of a threat to injure, in violation of 18 U.S.C. § 875(c).

     2.    Maximum Penalties

        Count Two through Five each carry a maximum sentence of 5 years imprisonment, a fine of not more than $250,000, or both imprisonment and fine; a term of supervised release of at least to 3 years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of not more

Defendant's Initials _____             AF Approval _MRD_

than 2 years imprisonment as well as the possibility of an additional term of supervised release. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Counts Two through Five are:

> First: That the Defendant sent a message in interstate commerce containing a true threat to injury the person of another; and
>
> Second: That the Defendant did so knowingly.

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One, Six, Seven, and Eight, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

Defendant's Initials _____      2

## 6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____          3

## B.    Standard Terms and Conditions

### 1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

### 2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _____               4

3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges

Defendant's Initials _____ 5

that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. Defendant's Waiver of Right to Appeal and
   Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §

Defendant's Initials _____ 6

3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to

Defendant's Initials _____                7

be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____    8

10.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __19th__ day of July, 2011.

ROBERT E. O'NEILL
United States Attorney

JAMES D. SPENCE, JR.
Defendant

By: _____
MARK B. DEVEREAUX
Assistant United States Attorney

JAMES H. BURKE, JR.
Attorney for Defendant

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief

Defendant's Initials _____        9

UNITED STATES OF AMERICA

v.                                                          Case No. 3:11-cr-87-J-34MCR

JAMES D. SPENCE, JR.

---

## PERSONALIZATION OF ELEMENTS

### COUNT TWO

1.     On October 21, 2010, at approximately 8:04 p.m., at Jacksonville, did you send a

message in interstate commerce from Jacksonville, Florida, to Falls City, Nebraska, at

the Community Medical Center, that is, a telephone communication to CGF, which

telecommunication contained a true threat to injure a minor female child, that is, to

sexually molest said minor female child?

2.     Did you do so knowingly?

### COUNT THREE

1.     On October 21, 2010, at approximately 9:53 p.m., at Jacksonville, did you send a

message in interstate commerce from Jacksonville, Florida, to Kearney, Nebraska, at

the Good Samaritan Hospital, that is, a telephone communication to JM, which

telecommunication contained a true threat to injure a minor female child, that is, to rape

said minor female child?

2.     Did you do so knowingly?

Defendant's Initials _____                    10

## COUNT FOUR

1.     On October 22, 2010, at approximately12:06 a.m., at Jacksonville, did you send a message in interstate commerce from Jacksonville, Florida, to Nebraska City, Nebraska, at the St. Mary's Hospital, that is, a telephone communication to MB, which telecommunication contained a true threat to injure a minor female child, that is, to sexually assault said minor female child?

2.     Did you do so knowingly?

## COUNT FIVE

1.     On October 22, 2010, at approximately 6:13 a.m., at Jacksonville, did you send a message in interstate commerce from Jacksonville, Florida, to Albany, Missouri, at the Northwest Medical Center, that is, a telephone communication to AG, which telecommunication contained a true threat to injure a minor female child, that is, to rape said minor female child?

2.     Did you do so knowingly?

UNITED STATES OF AMERICA

v.                                          Case No. 3:11-cr-87-J-34MCR

JAMES D. SPENCE, JR.

_____

## FACTUAL BASIS

### COUNT TWO

On October 21, 2010, at 8:04 p.m., Spence telephoned the Community Medical

Center in Falls City, Nebraska from Jacksonville, Florida. The phone call was answered

by CGF, an emergency technician at the medical center. Upon answering the call, a

male voice, who she (CGF) described as anxious, stated that he was going to molest a

young girl that night. The defendant stated that he babysat the girl yesterday and finger

fucked the hell out of her and had anal sex with her. He also stated that the girl had

swallowed his sperm and said it was salty. The defendant stated that the girl did not

have hair between her legs and asked CGF what the color of her pubic hair was. The

defendant then said that he likes young girls because they don't ask questions. The

defendant said that the girl's name was Cindy and she was ten (10) years old.

CGF has listened to the recording from the Good Samaritan Hospital (Count 3)

and after listening to the recording, stated "Yes, that was him, definitely him." (The

defendant's telephone call charged in Count Three was recorded.)

Toll records from T-Mobile show that this telephone call was made from (205)

240-2336, Spence's cell phone number.

Defendant's Initials _____

## COUNT THREE

On October 21, 2010, at 9:53 p.m., Spence telephoned the Good Samaritan Hospital in Kearney, Nebraska from Jacksonville, Florida. The phone call was answered by JM, a communication specialist at Good Samaritan Hospital. Upon answering the call, a male caller began asking questions about whether a ten (10) year old girl could get pregnant by cumming inside her. JM told the caller that she could not give out medical advice. The caller advised that there was a girl next door who he had watch pornographic movies with him. The caller asked if JM had hair between her legs and if he could smell between her legs. At the end of the conversation JM continually asked the caller where he was located and the caller stated "fuck all that shit, I'm just going to go fuck her."

JM's conversation with the defendant was recorded. Toll records from T-Mobile reflect that this telephone call was made from (205) 240-2336, Spence's cell phone number.

## COUNT FOUR

On October 22, 2010, at 12:06 a.m., Spence telephoned the St. Mary's Hospital in Nebraska City, Nebraska from Jacksonville, Florida. The phone call was answered by MB. Spence identified himself as a thirty-five year old male. The defendant stated that he was babysitting a ten year old girl and had been sexually assaulting her for the last twelve hours. He said that he was going to continue watching the girl for two more

Defendant's Initials _____          2

days with the sexual assault continuing. The defendant claimed that he was showing the girl a lot of child pornography of an eight year old being penetrated sexually by a male. He further stated that he was finger fucking her and feeling up her hymen. The also commented that he ejaculated in the mouth of this girl and she swallowed his semen, which the young girl said was salty. The defendant continued to talk about having the girl for two more days and that he was going to fuck her every chance he could get.

MB has listened to the Good Samaritan taped conversation (Count Three) and said "That's the same voice." Toll records from T-Mobile reflect that this telephone call was made from (205) 240-2336, Spence's cell phone number.

### COUNT FIVE

On October 22, 2010, at 6:13 a.m., Spence telephoned the Northwest Medical Center in Albany, Missouri from Jacksonville, Florida. The phone call was answered by AG, a technician working in the emergency room. The defendant began by telling AG that he was watching an eight year old girl for twelve hours and will be watching her for two more days. The defendant stated that he stuck his finger in the little girl's vagina and could feel her hymen. The defendant further stated that he had put his semen in the girl's mouth and stuck his penis in her anus. He stated that he was going to get some more child porn and that he was going to place his ten inch penis inside the girl.

The Missouri State Highway Patrol served an investigative subpoena on the phone company for the hospital, Windstream Communications, and obtained

Defendant's Initials _____      3

documentation that showed that the number calling the hospital at the time of the call was (205) 240-2336, Spence's phone number.

Defendant's Initials _____    4